## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ABIRA MEDICAL LABORATORIES, | ) | 3:24-CV-00872 (SVN) |
| LLC d/b/a GENESIS DIAGNOSTICS, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHEM BLUE CROSS BLUE SHIELD | ) | July 2, 2025 |
| OF CONNECTICUT, ABC COMPANIES | ) | |
| 1-100, AND JOHN DOES 1-100, | | |
| *Defendants*. | | |

### <u>RULING AND ORDER ON DEFENDANT'S MOTION TO DISMISS</u>

Sarala V. Nagala, United States District Judge.

In this insurance-related action, Plaintiff Abira Medical Laboratories, LLC, alleges that it performed laboratory testing services for insureds of Defendants Anthem Blue Cross Blue Shield of Connecticut ("Anthem" or "Defendant"), ABC Companies 1-100 and John Does 1-100, for which Plaintiff has not been fully compensated. Plaintiff brings claims under state common law, the Families First Coronavirus Response Act ("FFCRA") and the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, although it also seeks to recover benefits and obtain equitable relief under the Employee Retirement Income Security Act ("ERISA"). Defendant has moved to dismiss the complaint in its entirety under Federal Rules of Civil Procedure 8 and 12(b)(6). For the reasons described below, the motion to dismiss is GRANTED with leave to amend, except as to the equitable estoppel, quantum meruit/unjust enrichment, and FFCRA and CARES Act claims, as well as claims barred by anti-assignment and time limitations provisions, and any state law claims preempted by ERISA and the Federal Employee Health Benefits Act ("FEHBA")—all of which are dismissed without leave to amend.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff initiated this lawsuit on May 14, 2024, Compl., ECF No. 1, and quickly amended its complaint when the Court pointed out that the original complaint alleged that the relevant events took place in Pennsylvania, rather than Connecticut, *see* Order, ECF No. 9; Am. Compl., ECF No. 10.  The amended complaint contains the following allegations, which are accepted as true for the purpose of this motion.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff operates a laboratory business that performs medical testing services on specimens submitted to it.  ECF No. 10 ¶¶ 1, 19.  Defendant Anthem is a mutual insurance company that provides health insurance services.  *Id.* ¶¶ 2, 8.  The amended complaint also includes unnamed Defendants ABC Companies 1-100 and John Does 1-100.  *See id.* ¶ 12.

From approximately February 2016 to October 2020, Plaintiff provided laboratory testing services for Defendants and, specifically, for Defendants' "insureds/claimants."  *See id.* ¶¶ 1–2, 30–32.  Plaintiff alleges that these services were ordered by "physician members of insurance companies . . . , by a non-member physician, or an insured/patient member of an insurance company."  *See, e.g.*, *id.* ¶ 1.  An unspecified number of claims relate to testing services related to COVID-19.  *See id.* at ¶¶ 44, 55–56.

Plaintiff submitted insurance claims to Defendants to receive payment for the laboratory services performed, which Defendants were "supposed to pay."  *Id.* ¶ 29; *see also id.* ¶ 25.  Plaintiff alleges that Defendants were required to pay such claims, in part, because Defendants entered into insurance contracts with insureds/claimants that required Defendants to pay for laboratory testing services for these insureds/claimants, and that the insureds/claimants assigned to Plaintiff their rights under these insurance contracts by providing their insurance information to Plaintiff for laboratory testing.  *Id.* ¶¶ 26–27, 36, 43.

The amended complaint itself does not specify how many claims are at issue, but alleges that their value is not less than $3,793,084. *Id.* ¶ 1. Defendants processed and paid 135 claims submitted by Plaintiff, such that Plaintiff alleges that it was induced to render more laboratory services for the insureds/claimants of Defendants. ECF No. 10 ¶ 31. Plaintiff also alleges that certain "intermittent communication" from Defendants induced this reliance and that Defendants knew that their actions would induce such reliance. *Id.* Eventually, after Defendants allowed Plaintiff's claims to grow, Defendants began refusing to pay claims submitted by Plaintiff. *Id.* Plaintiff alleges that it exhausted administrative remedies concerning the nonpayment of claims by filing appeals when claims were denied. *Id.* ¶¶ 4, 38.

Plaintiff alleges that it may legally recover for the underpaid or unpaid claims, asserting it is a "designated representative" within the meaning of 29 C.F.R. § 2560.503-1(b)(4)[1] to secure benefits on behalf of "insureds/claimants," or that it is otherwise a contract assignee of the contract between Defendant and its insureds, such that it is "in privity" of contract with Defendants. *Id.* ¶¶ 27, 35–36, 43; *see also id.* ¶ 37.

Plaintiff brings claims for: breach of contract (Count 1); breach of the implied covenant of good faith and fair dealing (Count 2); fraudulent misrepresentation (Count 3); negligent misrepresentation (Count 4); promissory estoppel (Count 5); equitable estoppel (Count 6); quantum meruit/unjust enrichment (Count 7); and violation of the Families First Coronavirus Response Act ("FFCRA") and the Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Count 8). Plaintiff does not bring a claim under ERISA, despite alleging that, "[t]o the extent that the contracts relevant to the underlying claims are governed by ERISA," Plaintiff's action "is

---

[1] That section provides, in relevant part: "The claims procedures [under ERISA] do not preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination. Nevertheless, a plan may establish reasonable procedures for determining whether an individual has been authorized to act on behalf of a claimant . . . ."

brought to: (1) recover benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), and (2) for equitable relief, pursuant to 29 U.S.C. § 1132(a)(3)." *Id.* ¶ 34.

Defendant first moved to dismiss the amended complaint in July of 2024. *See* Mot. to Dismiss, ECF No. 19. Following a discovery conference on a motion to stay discovery after the filing of Defendant's motion to dismiss, the Court ordered that Plaintiff disclose a list of claims at issue, which included the insureds' dates of birth. Order, ECF No. 31. Plaintiff's list of claims identified 3,003 claims at issue in this case (the "Disputed Claims"). *See* ECF No. 42-1 at 10; Spreadsheet, ECF No. 42-5. Defendant represents it was able to identify 2,445 of the Disputed Claims as claims administered by it. *See* ECF No. 42 at 11.

After receiving this list from Plaintiff, Defendant moved to file an amended motion to dismiss to include materials related to the Disputed Claims. *See* Mot. for Leave to File Am. Mot. to Dismiss, ECF No. 38. The Court granted this request, and Defendant filed the presently pending amended motion to dismiss, including charts depicting which claims it was able to identify, as well as plan documents for the plans governing the claims at issue. *See* ECF Nos. 42-2–42-126; *see also* ECF No. 46.

## II.    RELIANCE ON MATERIALS OUTSIDE OF THE COMPLAINT

Defendant has moved to dismiss the complaint on all counts under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. Am. Mot. to Dismiss, ECF No. 42. As an initial matter, the Court concludes that it may consider the attachments to Defendant's amended motion to dismiss, ECF Nos. 42-2–42-126, in ruling on the motion to dismiss.

A motion to dismiss is a challenge to the legal feasibility of a complaint. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016). When evaluating such a motion, courts generally do not look beyond facts in the complaint, documents appended to the complaint or incorporated

by reference, and matters of which a court may take judicial notice. *Id.* at 559. A court may consider an extrinsic document that is "integral" to the complaint if the complaint "relies heavily upon [the document's] terms and effect." *Id.* An integral document is typically "a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Id.* (citation omitted).

Here, the Court will consider the materials attached to the amended motion to dismiss, as they are integral to the complaint. Many of Plaintiff's claims stand or fall based on the materials offered by Defendant. For example, many of Plaintiff's claims and Defendant's defenses require review of the language contained in the plan documents governing each claim. So, too, will the Court consider the spreadsheet of claims Plaintiff disclosed to Defendant and the claims charts offered by Defendant, which offer basic information concerning each claim. Indeed, while Plaintiff may have a different interpretation of Defendant's claim charts and their import than does Defendant, Plaintiff does not wholesale challenge the Court's ability to consider the appended materials at this stage.

## III.    RULE 8: FAIR NOTICE

The Court concludes that the unnamed Defendants must be dismissed pursuant to Rule 8, but that the amended complaint otherwise survives Defendant's cursory Rule 8 challenge.

The "principal function" of Rule 8 is to give an adverse party to a pleading "fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Accordingly, Rule 8 requires a plaintiff to "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Kittay v. Kornstein*,

230 F.3d 531, 541 (2d Cir. 2000) (internal quotation omitted); *see also Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) (internal quotations omitted) ("Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.").

To begin, the Court dismisses the unidentified Doe Defendants from this action, as Plaintiff's vague allegations against them do not comply with Rule 8's fair notice requirement. Plaintiff alleges, in highly conclusory fashion, that Defendants ABC Companies 1-100 and John Does 1-100 are responsible in some manner for the allegations in the amended complaint; that Plaintiff's damages were proximately caused by these Defendants; and that these Defendants "acted in concert with, through, and were/was the agent, employee, contractor, partner, servant, employee and/or representative, with the permission and consent of the other Defendants." ECF No. 10 ¶ 12. The amended complaint's treatment of the unnamed Defendants is "so vague as to make it impossible to identify them." *See Leftridge v. Jud. Branch*, No. 3:22-CV-411 (JAM), 2023 WL 4304792, at *11 (D. Conn. June 30, 2023) (dismissing unknown defendants under Rule 8's notice requirement).[2]

The Court rejects Anthem's request for dismissal on Rule 8 grounds, however. If a healthcare provider seeks to recover benefits on behalf of insureds but neglects "to identify with sufficient particularity the assignor-beneficiaries whose claims it is asserting, the participants through whom the beneficiaries have benefits, or the identity of the plans under which such benefits are allegedly conferred," the action may properly be dismissed for failure to comply with Rule 8's fair notice requirement. *See MC1 Healthcare, Inc. v. United Health Grp., Inc.*, No. 3:17-

---

[2] At the oral argument on the present motion, Plaintiff conceded that the ABC Companies and Doe Defendants were properly dismissed.

CV-01909 (KAD), 2019 WL 2015949, at *6–7 (D. Conn. May 7, 2019), *reconsidered on other grounds*, No. 3:17-CV-01909 (KAD), 2019 WL 3202965 (D. Conn. July 16, 2019) ("Without knowing whose rights [plaintiff] purports to assert, or the plans under which those rights allegedly derive, [defendant] does not have fair notice as to the claims asserted and cannot defend the claims in a meaningful or orderly manner."); *Murphy Med. Assocs., LLC v. Yale Univ.*, No. 3:22-CV-33 (KAD), 2023 WL 2631798, at *6 (D. Conn. Mar. 24, 2023) (same), *aff'd*, 120 F.4th 1107 (2d Cir. 2024) (*per curiam*); *see also Healthcare Just. Coal. DE Corp. v. Cigna Health & Life Ins. Co.*, No. 3:23-CV-1689 (JAM), 2024 WL 4264391, at *4–5 (D. Conn. Sept. 23, 2024) (concluding that complaint failed to comply with Rule 8, in part, where the complaint did not contain sufficient information about the claims at issue).

But the Court concludes that it cannot dismiss, pursuant to Rule 8, the 558 Disputed Claims that Anthem has been unable to identify.  Anthem argues for dismissal of these unidentified claims because it is unable to match these claims to members whose health benefits plans it administers. *See* ECF No. 42-1 at 15.  But Anthem is on sufficient notice regarding key aspects of these claims such that dismissal under Rule 8 for failure to provide fair notice is inappropriate.  Notably, because of the list of claims provided by Plaintiff, Anthem knows the patients' initials and dates of birth, dates of service, and billed amount for each of the 558 unmatched claims.  *See* ECF No. 42-5.  This information is enough for Anthem have a fair idea of whose rights Plaintiff attempts to assert and what defenses it may be able to raise.  *See MC1 Healthcare, Inc.*, 2019 WL 2015949, at *6–7.  Indeed, in this instant motion, Anthem raises a defense stemming from review of this information—that it cannot be liable for the unidentified claims as it does not administer the health plans for these claims.

The problem is that Plaintiff brings allegations to the contrary—that it provided services for Anthem's insureds, including for these 558 allegedly unidentified claims. *See, e.g.*, ECF No. 10 ¶ 1. Thus, Anthem's argument creates a factual dispute with Plaintiff over whether it, in fact, administered the 558 claims in question. At this stage, the Court must draw all reasonable inferences in Plaintiff's favor and assume well-pleaded factual allegations to be true. *See Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Accordingly, it cannot dismiss the 558 unidentified claims on Rule 8 grounds at this juncture.

So, too, is the Court unable to dismiss the 443 "Non-Anthem Host Claims," pursuant to Rule 8.[3] Anthem argues that for 443 claims, it "was not the third-party claims administrator for these claims, as the Patients for those claims had health benefits plans issued in separate states by non-party 'Blue' entities," and that it did not process, review, fund, insure, or underwrite these claims. ECF No. 42-1 at 20. Even more so than the 558 unidentified claims, Anthem has sufficient notice regarding these 443 claims to mount a defense—notably the defense that it does not administer the claims in question. Thus, a dismissal of these 443 claims on Rule 8 grounds is not appropriate.

Both of these groups of claims—the 558 unidentified claims and the 443 "Non-Anthem Host Claims,"—are, however, dismissed for separate reasons outlined below.

## IV.     RULE 12(b)(6):  FAILURE TO STATE A CLAIM

For the reasons explained below, the Court holds that Plaintiff's amended complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6).

---

[3] It is not explicitly clear from the organization or text of Defendant's brief under which rule Defendant seeks dismissal for the 443 "Non-Anthem Host Claims." *See* ECF No. 42-1 at 29–30. The Court construes Defendant to seek dismissal for these 443 claims pursuant to Rule 8, but also under Rule 12(b)(6), insofar as Defendant believes none of Plaintiff's causes of action are plausibly pleaded. The latter argument is discussed further below.

A. <u>Legal Standard</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber*, 648 F.3d at 104 (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

B. <u>ERISA Preemption and Standing</u>

First, the Court concludes Plaintiff's state law causes of action are preempted by ERISA as to 333 claims made pursuant to ERISA-governed health plans and that Plaintiff lacks standing to pursue claims pursuant to ERISA.

### 1. *ERISA Preemption*

The starting point for ERISA preemption analysis is Section 514(a) of ERISA, which provides that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). As a general matter, this preemption is "deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern." *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 46 (1987).

"The purpose of ERISA preemption is to ensure that all covered benefit plans will be governed by unified federal law, thus simplifying life for employers administering plans in several states, because [a] patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 113 (2d Cir. 2008) (citation omitted). To that end, ERISA preempts state common law claims that seek "to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA." *Id.* at 114 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004)). Accordingly, Courts in this circuit have held that ERISA preempts state common law claims where a third-party challenges a defendant's failure to pay for services provided pursuant to ERISA-governed health plans and are not premised on another independent legal duty. *See Abira Med. Lab'ys, LLC v. Cigna Health & Life Ins. Co.*, No. 3:23-CV-830 (VAB), 2024 WL 4349052, at *13 (D. Conn. Sept. 30, 2024), *aff'd*, No. 24-2837-CV, 2025 WL 1443016 (2d Cir. May 20, 2025) (summary order); *Murphy Med. Assocs., LLC*, 2023

WL 2631798, at *8.

As to the 333 of the Disputed Claims, which are subject to ERISA-governed health plans, all of Plaintiff's state law claims are preempted. *See* Cheffer Decl., ECF No. 42-4. These 333 claims necessarily "relate to" ERISA-governed health plans. *See Murphy Med. Assocs., LLC*, 120 F.4th at 1114 (affirming district court's dismissal of state law claims seeking reimbursement for laboratory tests for ERISA-covered health plans as "related to" ERISA plans); *Abira Med. Lab'ys, LLC*, 2024 WL 4349052, at *13 (finding the same). Indeed, Plaintiff's entire theory of recovery in this case rests on it allegedly standing in the shoes of the insureds as their assignee. In this way, a necessary step in the adjudication of Plaintiff's claims is analysis of the terms of these ERISA-governed health plans. Such analysis would include determination as to the insureds/assignors' membership in the plan and whether the terms of the plan covered the services rendered by Plaintiff. In ruling on Plaintiff's state law claims, there would be no way around some analysis of the language in the ERISA-governed health benefit plans. Thus, for the 333 Disputed Claims for which analysis of ERISA-governed health plans would be necessary, Plaintiff's state law claims must be dismissed.

Plaintiff argues that "it does not allege that payment is due according to the terms of an ERISA plan," Pl.'s Br., ECF No. 57 at 20, but this contention is mutually exclusive with the fundamental premise of its case. Plaintiff further argues, without citation, that applying preemption here would "defeat the goal of ERISA by leaving the providers without recourse and discouraging them from providing medical services to plan beneficiaries." *Id.* at 16. But this argument misses that applying preemption here in fact furthers the basic purpose underlying ERISA's preemption scheme—to provide a uniform, federally-governed rubric of recovery, rather than a patchwork framework sewn together with various state laws. *See Paneccasio*, 532 F.3d at

113.

Thus, Plaintiff's state law claims as to the 333 Disputed Claims that are governed by ERISA plans are preempted and must be dismissed. Because re-pleading would not remedy this deficiency, the dismissal of these claims is without leave to amend.

### 2. ERISA Standing

Additionally, the Court concludes that, were it to construe Plaintiff as bringing a claim pursuant to ERISA, Plaintiff has not plausibly alleged sufficient standing to bring such a claim.

Section 502 of ERISA authorizes health plan participants and beneficiaries to bring civil actions to recover plan benefits. 29 U.S.C. § 1132(a); *see also Simon v. Gen. Elec. Co.*, 263 F.3d 176, 177 (2d Cir. 2001) (*per curiam*). Generally, courts narrowly construe Section 502 to allow only the entities it specifically enumerates to bring an action. *Simon*, 263 F.3d at 177. Courts have, however, "carved out a narrow exception" to this rule to grant standing, or the ability to bring an enforcement action, "to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care." *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 329 (2d Cir. 2011); *see also Abira Med. Lab'ys, LLC*, 2025 WL 1443016, at *3.

Importantly, though, a plaintiff must allege "specific assignment language" to survive a motion to dismiss, because "[n]ot all ERISA assignments convey the same rights." *Abira Med. Lab'ys, LLC*, 2024 WL 4349052, at *13. For example, "an assignment may give the assignee the right to bring only a claim for benefits, but not a claim for breach of fiduciary duty." *Id.* (quoting *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 258 (2d Cir. 2015)). Accordingly, courts have concluded that a plaintiff lacks standing to bring an action pursuant to ERISA where it fails to plead facts sufficient to determine what specific rights the insured assigned. *Abira Med. Lab'ys, LLC*, 2024 WL 4349052, at *13 ("Because Genesis fails to allege the actual language of the

assignment in their Complaint, they fail to allege standing sufficient to permit their ERISA claims"); *Murphy Med. Assocs., LLC*, 2023 WL 2631798, at *5–6 (dismissing plaintiff's ERISA claims where the complaint did not sufficiently allege language from the alleged assignment or any details of the plan beneficiaries' ERISA plans).

Although Plaintiff does not bring a standalone cause of action under ERISA, it alleges that it is entitled to benefits and equitable relief under ERISA. *See* ECF No. 10 ¶¶ 34, 39–49. Given this uncertainty about the scope of any ERISA-related relief Plaintiff is pursuing, the Court addresses Plaintiff's standing to bring a claim under ERISA, in an abundance of caution.

As a preliminary matter, it is undisputed that Plaintiff is neither a "participant" nor a "beneficiary" of an ERISA-governed plan. Thus, Plaintiff must plausibly allege that it received an assignment from a participant or beneficiary and has failed to do so.[4] Plaintiff alleges that the insureds/claimants assigned to Plaintiff their rights under insurance contracts by providing their insurance information to Plaintiff for laboratory testing. *Id*. ¶¶ 31, 43. But these allegations are conclusory: in an attempt to assert that it received an assignment, Plaintiff baldly alleges only that, and nothing more. And that this stage, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon*, 517 F.3d at 149. Indeed, as in both *Abira Med. Lab'ys, LLC*, 2024 WL 4349052, and *Murphy Med. Assocs., LLC*, 2023 WL 2631798, Plaintiff here fails to provide allegations as to how an assignment was accomplished and what rights and benefits were conveyed with any such assignment. Plaintiff, then, has not plausibly alleged that it may assert the rights of insureds/claimants under ERISA.

Plaintiff's reliance on *Neuroaxis Neurosurgical Assocs., PC v. Cigna Healthcare of New*

---

[4] While Plaintiff alleges that it is an "authorized representative" of the patients pursuant to 29 C.F.R. § 2650.503-1(b)(4), ECF No. 10 ¶¶ 3, 27, 35, 43, authorized representative status does not independently confer standing to bring an ERISA action in federal court. *See Park Ave. Aesthetic Surgery, P.C. v. Empire Blue Cross Blue Shield*, No. 19-CV-9761 (JGK), 2021 WL 665045, at *7 (S.D.N.Y. Feb. 19, 2021) (collecting cases).

*York, Inc.*, No. 11 CIV. 8517 (BSJ) (AJP), 2012 WL 4840807, at *3 (S.D.N.Y. Oct. 4, 2012), is misplaced.  There the court found that a healthcare provider had standing to sue on behalf of patients in part because of defendant's "long-standing pattern and practice of direct payment" to plaintiff.  *Id.*  Here, Plaintiff alleges that Defendant made payment on 135 claims.  *See* ECF No. 10 ¶ 31.  As described more thoroughly below, Plaintiff does not allege the payment amount as to these claims, when the payments were made, or any other allegations to come close to amounting to a long-standing pattern and practice of direct payment.  Therefore, Plaintiff has failed to plausibly show it received an assignment from the insureds such that it may bring suit pursuant to ERISA.

C.  <u>Anti-Assignment Provisions</u>

An additional basis of dismissal for 1,197 Disputed Claims is that they are governed by health plans that contain anti-assignment provisions, effectively barring Plaintiff from seeking recovery on behalf of insureds/claimants.

Even where a healthcare provider plausibly shows that it received a valid assignment to seek payment on behalf of a patient, the healthcare provider may still be barred from recovery if the governing health plan contains an anti-assignment provision.  This is true to the extent Plaintiff seeks to recover pursuant to ERISA, *see McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 147 (2d Cir. 2017) (concluding that, based on the plain language of an anti-assignment provision in an ERISA-governed plan, plaintiff's acceptance of an assignment was "ineffective—a legal nullity"), as well as pursuant to state law, *Murphy Med. Assocs., LLC.*, 120 F.4th at 1113 (concluding that state law breach of contract claim, as well as any claim seeking recovery pursuant to ERISA, was barred by a valid anti-assignment provision).

As part of the materials submitted in support of its motion to dismiss, Defendant has

submitted the relevant plan language for the 1,197 Disputed Claims it contends prohibit assignment of rights of payment. *See, e.g.*, ECF No. 46.  These claims relate to both ERISA-governed and non-ERISA-governed health plans.[5]  To provide a few examples of relevant language, the Wethersfield Town and Board of Education Plan states:

> A Covered Person may not assign this Benefit Program; or any of the Covered Person's rights; benefits; or obligations under this Benefit Program to any other person or entity except with the prior written consent of Anthem BCBS; which consent may be conditioned by or withheld by Anthem BCBS in its sole discretion.  Any attempted assignment by a Covered Person in violation of this provision shall not impose any obligation upon Anthem BCBS to honor; or give effect to such assignment and shall be grounds for cancellation of this Benefit Program.

ECF No. 42-25 at 100.  Similarly, the Capital One Corporation Plan states:  "You cannot assign Your right to receive payment to anyone, except as required by a 'Qualified Medical Child Support Order' as defined by, and if subject to, ERISA or any applicable Federal law."  ECF No. 42-66 at 54–55.  Defendant provides examples of several such clauses in its briefing and argues that they are representative of all 1,197 claims with anti-assignment provisions that it has identified.  ECF No. 42-1 at 23–24.  The annotated claims chart submitted by Defendant provides extensive citations to the relevant anti-assignment provisions for each plan.  *See* ECF No. 46 (quoting each anti-assignment provision in the "PAGE/LANGUAGE" column).

Despite Defendant's citation to each individual anti-assignment provision as described above, Plaintiff has halfheartedly attempted to contest the anti-assignment provisions, arguing vaguely that "there have been found certain contradictory provisions of the ERISA plans, which call for payment to assignees of beneficiaries."  ECF No. 57 at 22.  But Plaintiff only identifies

---

[5] Although Defendant's argument regarding dismissal of these 1,197 Disputed Claims appears in a section of its brief largely focused on ERISA arguments, the Court construes Defendant as arguing for dismissal of the claims with anti-assignment provisions found not only in ERISA plans, but also in non-ERISA plans.  The Court does so in light of Defendant's explicit quoting of provisions from non-ERISA-governed plans.

one such clause in one plan.  *Id.* (quoting the Wethersfield Town and Board of Education Plan, ECF No. 42-25 at 30).  And the language Plaintiff cites does not appear to contradict that plan's anti-assignment clause at all.  Indeed, Defendant persuasively argues that the clause cited by Plaintiff has nothing to do with the assignment of benefits; rather, as a clause housed under the "MAXIMUM ALLOWABLE AMOUNT" heading, it instead explains how payments to out-of-network providers are calculated.  Def.'s Reply Br., ECF No. 65 at 14; ECF No. 42-25 at 30.  Thus, Plaintiff fails to actually identify any clause that contradicts the many anti-assignment clauses to which Defendant cites.  Accordingly, Plaintiff's claims, whether brought pursuant to ERISA or state law, are barred as to the 1,197 Disputed Claims with anti-assignment provisions.

Because re-pleading would not remedy this deficiency, the dismissal of these claims is without leave to amend.

D.  Time Limitation Provisions

Next, the Court concludes that 125 Disputed Claims must be dismissed as time-barred by the express language of the governing health plans.

ERISA does not set a statutory time limitation for filing an action to recover benefits.  *See Muto v. CBS Corp.*, 668 F.3d 53, 57 (2d Cir. 2012).  An ERISA plan and a member may, however, agree by contract to a particular limitations period in which to bring a claim, and courts may enforce such agreements.  *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 106, 108 (2013) ("The principle that contractual limitations provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan.").  Moreover, as a matter of Connecticut contract law, parties may contract to limit the time in which a claim may be filed.  *See Monteiro v. Am. Home Assur. Co.*, 177 Conn. 281, 283 (1979) (concluding that, because an insurance policy contained a time limitation provision requiring suit be brought within one year of

loss, failure to comply with such a provision would be a valid defense under Connecticut contract law).

Here, 125 Disputed Claims are governed by plans with a time limitation provision barring suit more than two or three years after the date of service.  *See*, ECF No. 42-3, "Timeliness Provision?" and adjacent "Page/Language" columns.  For example, the City of New Britain Plan provides that "[n]o legal action may be taken to recover benefits within 60 days after notice of claim has been given, nor may any action be brought after two years from the date Covered Services are received." ECF No. 42-11 at 125.  Plaintiff seeks compensation for two claims related to this plan, both with dates of service dating back to 2016.  *See* ECF No. 42-3 at rows 2585, 2970.  Accordingly, any lawsuit related to these claims should have been filed in 2018, well before the May 14, 2024, initiation of this suit.  Defendant argues this example is representative of 125 claims that are time-barred by similar provisions in the governing plans.  ECF No. 42-1 at 25.

Plaintiff does not contest that 125 Disputed Claims are governed by plans with time limitations provisions.  Instead, Plaintiff argues that the statute of limitations provision should be equitably tolled because Plaintiff was not provided a copy of the insurance contract or plan documents during the claims submission process, such that it would be "unjust" to require Plaintiff to comply with contractual limitations in the plan documents.  ECF No. 57 at 24–25.

Plaintiff's argument fails.  "Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004).  Equitable tolling may apply where a defendant induces a plaintiff to file late through "trickery or deception," or where a plaintiff was prevented from learning of her cause of action during the relevant time period.  *Id.* at 323.  Plaintiff's cursory argument does not point

to any allegations of trickery or deception in terms of Defendant causing a delay in Plaintiff's learning of a potential cause of action accruing. Nor does Plaintiff suggest there is any reason it could not have at least attempted to obtain plan documents from the insureds in whose shoes it claims to stand in this suit. In short, Plaintiff has not diligently pursued its alleged rights with respect to these 125 Disputed Claims, and there is no basis for finding that equitable tolling should apply. Thus, Plaintiff's claims related to these 125 Disputed Claims are dismissed.

Because re-pleading would not remedy this deficiency, the dismissal of these claims is without leave to amend.

### E.  FEHBA Preemption

Next, Defendant seeks dismissal of two Disputed Claims governed by the Federal Employee Health Benefits Act.

FEHBA "contains a preemption clause, § 8902(m)(1), displacing state law on issues relating to coverage or benefits afforded by health-care plans." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 683 (2006). Under this provision, state law "is displaced on matters of coverage or benefits." *Id.* at 686; *see also Angstadt v. Empire HealthChoice HMO, Inc.*, No. 15-cv-1823 (SJF) (AYS), 2017 WL 10844692, at *9 (E.D.N.Y. Mar. 16, 2017). Moreover, the Office of Personnel Management ("OPM"), not the insurance provider, is the proper defendant in a lawsuit brought pursuant to FEHBA. *See Angstadt*, 2017 WL 10844692, at *9.

Here, Plaintiff's state law claims related to the two Disputed Claims governed by the FEHBA implicate "matters of coverage or benefits," as they seek benefit for services rendered, pursuant to the terms of health benefit plans, and Plaintiff has not named OPM as Defendant in this suit. Accordingly, Plaintiff has not plausibly pleaded that it is entitled to relief for the two claims governed by FEHBA. *See* ECF No. 42-3 at rows 143, 2426. Because re-pleading would

not remedy this deficiency, the dismissal of these claims is without leave to amend.

F.    State Law Claims

For the reasons described below, although Plaintiff's claims are not barred by the applicable state law statute of limitations, all of Plaintiff's state law claims must be dismissed for failure to state a claim.

1.    *Statute of Limitations*

At this juncture, the Court cannot conclude that Plaintiff's state law claims are barred by the applicable state statute of limitations.

The statute of limitations in Connecticut for breach of contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, and quantum meruit/unjust enrichment is six years.  Conn. Gen. Stat. § 52-576(a).  The statute of limitations for fraudulent and negligent misrepresentation is three years.  Conn. Gen. Stat. § 52-577.  For breach of contract, the cause of action accrues, and statute of limitations clock begins ticking, "at the time the breach of contract occurs, that is, when the injury has been inflicted."  *Beckenstein v. Potter & Carrier, Inc.*, 191 Conn. 150, 156 (1983).  For promissory estoppel, the cause of action accrues when the defendant "fails to fulfill its promise," *Weiss v. Smulders*, 313 Conn. 227, 245 (2014); for unjust enrichment, when injury is inflicted without regard to a plaintiff's knowledge of injury being sustained, *Levy v. World Wrestling Ent., Inc.*, No. CIV.A.308-01289 (PCD), 2009 WL 455258, at *4 (D. Conn. Feb. 23, 2009); and for fraud, when the plaintiff becomes aware of the fraud.  *See Joslin v. Grossman*, 107 F. Supp. 2d 150, 157 (D. Conn. 2000).  The statute of limitations defense is an affirmative defense, but may be raised "when the facts supporting the defense appear on the face of the complaint."  *Levy*, 2009 WL 455258, at *4.

Here, neither Plaintiff's allegations nor the extrinsic documents that the Court has

considered provide sufficient specificity on when each cause of action accrued such that the Court may make a determination on when any such action accrued. Defendant comes close to admitting as much in noting that the amended complaint "is silent as to when each of its claims accrued." ECF No. 42-1 at 38. Defendant's arguments seem to conflate the date of service with the accrual of the statute of limitations period. *See id.* (arguing that Plaintiff did not file its lawsuit until 8 years and 3 months "since some of the services were purportedly provided."). In this way, neither party gives the Court enough information to conclude when any of the causes of actions accrued. Accordingly, the Court cannot dismiss Plaintiff's state law claims on statute of limitations grounds.

But Plaintiff's claims must be dismissed as not plausibly pleaded, as set forth below.

### 2. Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing (Counts One and Two)

First, the Court concludes that Plaintiff has failed to plausibly allege that Defendant breached a contract between them. The elements of a breach of contract claim are "the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *CCT Commc'ns, Inc. v. Zone Telecom, Inc.*, 327 Conn. 114, 133 (2017).

In order for the parties to have formed an enforceable contract "there must exist an offer and an acceptance based on a mutual understanding by the parties . . . . The mutual understanding must manifest itself by a mutual assent between the parties." *Computer Reporting Serv., LLC v. Lovejoy & Assocs., LLC*, 167 Conn. App. 36, 44 (2016). In short, there must be a "meeting of the minds." *Herbert S. Newman & Partners, P.C. v. CFC Const. Ltd. P'ship*, 236 Conn. 750, 764 (1996). Such assent may be expressly memorialized in writing, but it also may be implied-in-fact. *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 574 (2006).

An implied-in-fact contract "is the same as an express contract, except that assent is not expressed in words, but is implied from the conduct of the parties." *Id.* at 574. Such a contract

20

arises where plaintiff "rendered services, at the request of the defendant, under an expectation that they were to be paid for and if the defendant either intended to pay for them or the services were rendered under such circumstances that the defendant knew, or, as a reasonable person, should have known that the plaintiff did expect payment." *Connecticut Light & Power Co. v. Proctor*, 324 Conn. 245, 260–61 (2016).  Fundamentally, this is a fact-intensive inquiry:  in determining whether the complaint has pleaded that the parties formed an implied-in-fact contract, the Court examines the conduct of the parties, in light of the alleged context and circumstances.  *See id.* at 261; *Rahmati v. Mehri*, 188 Conn. 583, 587 (1982) ("It is not fatal to a finding of an implied contract that there were no express manifestations of mutual assent if the parties, by their conduct, recognized the existence of contractual obligations.").

It is clear there is no express contract between Plaintiff and Defendant.  Plaintiff does not allege that it expressly reached mutual assent as to the material terms of a contractual agreement with Defendant.

Nor does Plaintiff plausibly allege contract formation under the lens of an implied-in-fact contract.  Plaintiff alleges that Defendant processed and paid 135 claims, informed Plaintiff that such claims were "processed and paid," and gave "intermittent communication representing to [Plaintiff] that [Defendant] would continue to pay subsequent claims."  ECF No. 10 ¶ 31.  But Plaintiff provides no further context regarding the parties' course of dealings that may give rise to the reasonable inference that the parties had an implied-in-fact contract.  For example, Plaintiff does not provide any other allegations speaking to how long the pattern of payment was, which claims were paid, the value of the claims Defendant paid, the similarity of the paid claims to the unpaid ones, or any other representation, express or implied, about the prospect of paying future claims.  What the amended complaint provides, then, is a vague and undefined assertion of past

payment of claims and the bald assertion of "intermittent communication" regarding the future payment of claims. Moreover, Plaintiff's allegations of Defendant's repeated failure to pay it what it is owed, *see, e.g., id.* at ¶ 62, are inconsistent with its contention that it formed an agreement with Defendant. *See Abira Med. Lab'ys, LLC*, 2025 WL 1443016, at *1. Even drawing reasonable inferences in Plaintiff's favor, as the Court must at this juncture, the amended complaint simply does not provide enough well-pleaded facts concerning the circumstances and context of the parties' interactions to make plausible the contention that the parties' conduct amounted to an implied-in-fact contract.

Having concluded that the amended complaint does not plausibly allege contract formation directly between Plaintiff and Defendant, the Court must now turn to whether the complaint plausibly alleges that Plaintiff was the assignee of a contract between "insureds/claimants" and Defendant. The amended complaint has not done so.

"[T]o constitute an assignment there must be a purpose to assign or transfer the whole or a part of some particular thing . . . and the subject matter of the assignment must be described with such particularity as to render it capable of identification." *Centerplan Constr. Co., LLC v. City of Hartford*, 343 Conn. 368, 394 (2022). Plaintiff alleges that Defendant's insureds/claimants were party to an insurance contract that required Defendant to pay for laboratory services and that these insureds/claimants assigned to Plaintiff the right to file insurance claims for lab testing and collect benefits from the insurance company, by "providing [Plaintiff] the necessary insurance information for [Plaintiff] to file the claims and collect the payments on behalf of the insureds." ECF No. 10 ¶ 59. Elsewhere in the amended complaint, Plaintiff alleges the same assignment was accomplished by insureds/claimants "providing their authorization and/or insurance information to [Plaintiff], specifically for [Plaintiff] to claim payments from . . . Defendant[] for the lab tests."

*Id.* ¶ 26. This assignment, Plaintiff contends, put it "in privity" with Defendant and makes Plaintiff entitled to benefits of the contract. *Id.* ¶ 60.

The Court concludes that Plaintiff fails to allege that the subject matter of the assignment was described with the requisite degree of particularity. Plaintiff baldly asserts that it received an assignment to claim payment, without alleging any specific terms of the assignment or providing any factual allegations of how the assignment was executed, other than the vague assertion that insureds/claimants provided their insurance information to Plaintiff. Plaintiff does not identify the terms of even a single assignment; it simply asserts, in conclusory fashion, that it received an assignment as to each of the thousands of claims at issue. Accordingly, the Court must conclude that the allegations provide no "particularity as to render [the assignment] capable of identification." *Centerplan Constr. Co., LLC*, 343 Conn. at 394.

Nor is Plaintiff's reliance on *Abira Med. Lab'ys, LLC v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 24-CV-759, 2024 WL 2188911 (E.D. Pa. May 15, 2024) convincing. There, the Court, applying Pennsylvania law, did find a valid assignment between patients and the plaintiff in a somewhat similar factual context. But the Court specifically noted that the plaintiff there had alleged that each patient "received a 'requisition[ ] for laboratory testing services' in which each patient 'executed an assignment of benefits with respect to their original requisitions for services,'" and that plaintiff alleged that "[t]hese documents . . . purported to assign the benefit of payment by [defendant] to [plaintiff]." *Id.* at *2.

Here, Plaintiff does not allege that any particular documents purport to assign benefits. Instead, Plaintiff relies on a vague allegation that provision of insurance information initiated a contractual assignment. In its opposition brief, Plaintiff argues that assignment language can, in fact, be found in requisition forms. ECF No. 57 at 10, 27. Plaintiff argues that these forms

"contained assignments of benefits and attorney-in-fact designations, which transferred to Abira the insureds' right to payment and right to sue for payment." *Id.* at 10. But, even if reference to requisition forms were enough to allege a valid assignment—an issue the Court explicitly does not decide here—the amended complaint makes no mention whatsoever of requisition forms. While Plaintiff's citation represents that requisition language may be found in paragraphs 25–27 of the amended complaint, *see id.*, those paragraphs simply do not mention requisition forms or allege what language any requisition form contained. It is well-settled that a plaintiff cannot amend its complaint by asserting new facts through an opposition to a motion to dismiss. *See Killoran v. Westhampton Beach School Dist.*, No. 21-cv-3264 (JS) (SIL), 2022 WL 4484630, at *8 (E.D.N.Y. 2022). Accordingly, the Court cannot rely on this representation in the opposition brief. And in any event, the Pennsylvania case is not binding on this Court and, applying Connecticut law here, the Court simply cannot find that Plaintiff's barebones allegation of an assignment plausibly shows a contract assignment with any degree of particularity.

Additionally, because the complaint fails to allege a contractual relationship between Plaintiff and Defendant, Plaintiff's claim in Count Two for breach of the covenant of good faith and fair dealing necessarily fails. *See Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 795 (2013) ("[B]ecause the covenant of good faith and fair dealing only requir[es] that neither party [to a contract] do anything that will injure the right of the other to receive the benefits of the agreement, it is not implicated by conduct that does not impair contractual rights.").

### 3. *Fraudulent and Negligent Misrepresentation (Counts Three and Four)*

Nor does the amended complaint state a claim for fraudulent or negligent misrepresentation.

Plaintiff's allegations of fraudulent misrepresentation fail to meet Rule 9(b)'s heightened pleading standard for actions alleging fraud. *See Veritas-Scalable Inv. Products Fund, LLC, v. FB Foods, Inc.*, 238 F.R.D. 339, 343 (D. Conn. 2006) (applying Rule 9(b) to fraudulent misrepresentation claim brought under Connecticut law). In order for a fraudulent misrepresentation claim to survive a motion to dismiss under Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021) (citation omitted). Plaintiff fails to state with any particularity the statements that it contends were fraudulent, or where and when the statements were made. This cause of action, therefore, fails at the threshold.

To state a claim for negligent misrepresentation under Connecticut law, a plaintiff must allege: (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result. *See Stuart v. Freiberg*, 316 Conn. 809, 821–22 (2015).

Plaintiff has not plausibly alleged the first three of these elements. Plaintiff vaguely asserts that Defendant made a misrepresentation in the form of an unspecified promise in their "insurance contracts" to pay for the costs of testing specimen, when Defendant, in fact, knew that it would later refuse to pay for these tests. ECF No. 10 ¶¶ 71–72. Plaintiff also alleges that in "intermittent communication" with Defendant, Defendant represented it would pay claims submitted by Plaintiff. *Id.* ¶ 31. But Plaintiff fails to provide any factual allegations showing the content of any such promise or any details of communications to plausibly show a promise was made. Additionally, Plaintiff offers few, if any, allegations to make plausible the proposition that Defendant knew or should have known such a promise, whatever it may have been, was false.

Plaintiff's allegations are effectively "[t]hreadbare recitals of the elements" of the cause of action, "supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. These do not meet the plausibility threshold.

Plaintiff's attempt in briefing to categorize Defendant's alleged fraudulent or negligent misrepresentation as one of omission, ECF No. 57 at 32, fails. "Fraud by nondisclosure, which expands on the first three of [the] four elements [for a fraud action], involves the failure to make a full and fair disclosure of known facts connected with a matter about which a party has assumed to speak, under circumstances in which there was a duty to speak. . . . A lack of full and fair disclosure of such facts must be accompanied by an intent or expectation that the other party will make or will continue in a mistake, in order to induce that other party to act to her detriment." *Asnat Realty, LLC v. United Illuminating Co.*, 204 Conn. App. 313, 321–22 (2021). Plaintiff makes no attempt to argue that its amended complaint satisfies these requirements.

For these reasons, Counts Three and Four are dismissed for failure to state a claim.

### 4. *Promissory and Equitable Estoppel (Counts Five and Six)*

Plaintiff's claims for promissory and equitable estoppel also fail.

Promissory estoppel is a cause of action recognized under Connecticut law—though Plaintiff has not successfully stated a claim for it. *See Torringford Farms Ass'n, Inc. v. City of Torrington*, 75 Conn. App. 570, 575 (2003). A "fundamental element" of promissory estoppel is the existence of a "clear and definite promise which a promisor could reasonably have expected to induce reliance." *Id.*; *Stewart v. Cendant Mobility Servs. Corp.*, 267 Conn. 96, 104 (2003). Additionally, the defendant must have done or said something "calculated or intended to induce [plaintiff] to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." *TD Bank, N.A. v. Salce*, 175

Conn. App. 757, 767 (2017).  Moreover, a plaintiff must show that he "exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge."  *Id.*

Here, as described above, Plaintiff fails to plausibly allege a clear and definite promise. Plaintiff has only vaguely alleged a promise between Defendant and its insureds/claimants without providing any facts about what that promise entailed.  *See, e.g.*, ECF No. 10 ¶ 63.  Plaintiff does not, for example, cite any specific contractual provisions supporting the proposition it asserts.  As with its misrepresentation claims, in its opposition brief, Plaintiff argues that it "relied on Defendant's representation that [Plaintiff], which stands in the shoes of the insureds, would be compensated for medical services."  ECF No. 57 at 32.  But the amended complaint does not support this assertion, as it sheds very little, if any, light on exactly what Defendant's "representation," or promise, was.

Additionally, Plaintiff's allegation that Defendant refused to pay claims that Plaintiff submitted actually cuts against Plaintiff's promissory estoppel claim.  Indeed, that Defendant paid for 135 claims but did not pay for more than 3,000 claims supports the inference that there was no clear and definite understanding between the parties.  *Abira Med. Lab'ys, LLC*, 2025 WL 1443016, at *2 (concluding that plaintiff's allegations regarding defendant's blatant disregard and repeated failure to fulfill its payment obligations undermines plaintiff's contention that there was a sufficiently clear and definite promise); *see also Abira Med. Lab'ys, LLC*, 2024 WL 4349052, at *9 ("[I]f [plaintiff] knew that [defendant] had not been paying for these services, [plaintiff] cannot plausibly allege that [defendant] had made a 'clear and definite promise' to pay for these services.").

Moreover, Plaintiff fails to assert that it exercised due diligence to "know the truth"

regarding Defendant's payment of claims.  *See TD Bank, N.A*, 175 Conn. App. at 767.  Plaintiff baldly asserts reliance, but does not provide any allegations supporting an inference that it attempted to learn whether Defendant's alleged representations were true.

As for Plaintiff's claim for equitable estoppel in Count Six, this claim must be dismissed, as Connecticut law recognizes equitable estoppel as a special defense, but not as a cause of action. *See Dickau v. Town of Glastonbury*, 156 Conn. 437, 442 (1968) ("[E]quitable estoppel is available only for protection and cannot be used as a weapon of assault."); *see also Abira Med. Lab'ys, LLC*, 2024 WL 4349052, at *8 ("Connecticut does not recognize equitable estoppel as a cause of action, but rather as a special defense.").  Accordingly, the Court's dismissal of the amended complaint's equitable estoppel claim is without leave to amend.

### 5. Quantum Meruit/Unjust Enrichment (Count Seven)

Plaintiff's quantum meruit/unjust enrichment claim must also be dismissed.  Quantum meruit allows for recovery out of the need to avoid unjust enrichment, even in the absence of an express or implied agreement.  *Gagne v. Vaccaro*, 255 Conn. 390, 401 (2001).  To recover for unjust enrichment, a plaintiff must plausibly plead:  "(1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment."  *Culver v. Culver*, 127 Conn. App. 236, 249 (2011).  In the health insurance context, "[c]ourts have repeatedly held that providers cannot bring unjust enrichment claims against insurance companies based on the services rendered to the insureds." *Murphy Med. Assocs., LLC*, 2023 WL 2631798, at *8; *MCI Healthcare, Inc.*, 2019 WL 2015949, at * 10 (collecting cases); *Travelers Indem. Co. of Connecticut v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001) ("The insurance company derives no benefit from those services; indeed, what the insurer gets is a ripened obligation to pay money to the insured—which hardly

can be called a benefit."); *see also Rowe Plastic Surgery of New Jersey, L.L.C. v. Aetna Life Ins. Co.*, No. 23-8083, 2024 WL 4315128, at *3 (2d Cir. 2024) (summary order) (affirming dismissal of unjust enrichment claim where the patient, not the insurance company, received the benefit of the providers' services); *Abira Med. Lab'ys, LLC*, 2025 WL 1443016, at *2. Plaintiff, as a provider of medical testing services, has failed to show how Defendant has incurred a benefit for the services allegedly rendered to their insureds, such that Defendant would be liable for unjust enrichment. In light of the settled law that insurance companies do not derive a benefit from services rendered to their insureds, leave to amend a quantum meruit/unjust enrichment claim would be futile.

### 6. *FFCRA and CARES Acts (Count Eight)*

Plaintiff's claim for violations of the FFCRA and CARES Act also fails. There is no private right of action, express or implied, in either act. *See Murphy Med. Assocs., LLC*, 120 F.4th at 1113; *see also Abira Med. Lab'ys, LLC*, 2024 WL 4349052, at *7. Plaintiff concedes this point in its opposition brief. *See* ECF No. 57 at 3 n.2. Accordingly, this count is dismissed without leave to amend.

## V.    CONCLUSION

For the reasons described herein, Defendant's motion to dismiss Plaintiff's amended complaint is GRANTED. The amended complaint is dismissed in its entirety.[6] The Court grants Plaintiff leave to amend the complaint to remedy the deficiencies identified in this order, except as to the equitable estoppel, quantum meruit/unjust enrichment, and FFCRA and CARES Act

---

[6] In light of its conclusion that Plaintiff's amended complaint must be dismissed in full, the Court need not consider Defendant's improper joinder argument, which is raised as an alternative remedy only if any claims survived the motion to dismiss. S*ee* ECF No. 42-1 at 10.

claims, as well as claims barred by anti-assignment and time limitations provisions, and any state law claims preempted by ERISA and FEHBA, which are dismissed without leave to amend.

Plaintiff may file a second amended complaint by July 23, 2025. Defendant must respond to the amended complaint by August 6, 2025. *See* Fed. R. Civ. P. 15(a)(3).

**SO ORDERED** at Hartford, Connecticut, this 2nd day of July, 2025.

 /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE